UNITED STATES DISTRCT COURT
EASTERN DISTRCT OF MISSOURI
EASTERN DIVISION

**FILED**

SEP 2 5 2024

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES OF AMERICA,          )
                                   )
     Plaintiff,                    )
                                   )
v.                                 )     **4:24CR505 JAR/ PLC**
                                   )
                                   )
ANTHONY VIRDURE II,                )
                                   )
     Defendant.                    )

## **INDICTMENT**

The Grand Jury charges that:

### **INTRODUCTION**

At all times material to this Indictment, unless otherwise specified below:

1.     Defendant Anthony Virdure II ("Defendant Virdure") was a resident of St. Louis, Missouri, in the Eastern District of Missouri.

2.     Defendant Virdure was employed by the United States Postal Service as a mail handler. Defendant Virdure was assigned to the United States Postal Service Processing and Distribution Center, located at 1720 Market Street, St. Louis, MO 63155 in the Eastern District of Missouri.

3.     As a mail handler, Defendant Virdure had access to all first-class mail routed through the Market Street Processing and Distribution Center.

4.     Searches of three separate locations in the Eastern District of Missouri revealed more than $1,500,000 in checks stolen from correspondence sent to the Market Street Processing and Distribution Center. Defendant Virdure's fingerprints were recovered from numerous checks recovered from each of the three separate search locations.

1

## COUNT 1
### Mail Theft (18 U.S.C. § 1708)

On or about November 15, 2023, in the Eastern District of Missouri, the defendant,

### ANTHONY VIRDURE II,

did steal and take from and out of an authorized depository for mail matter, to wit, the United

States Postal Service St. Louis Processing and Distribution Center, located at 1720 Market Street,

St. Louis, MO 63155, a letter enclosing a check, addressed to "WOP," at 500 East Broadway,

Alton, IL 62002, in violation of Title 18, United States Code, Section 1708.

## COUNT 2
### Mail Theft (18 U.S.C. § 1708)

On or about November 17, 2023, in the Eastern District of Missouri, the defendant,

### ANTHONY VIRDURE II,

did steal and take from and out of an authorized depository for mail matter, to wit, the United

States Postal Service St. Louis Processing and Distribution Center, located at 1720 Market Street,

St. Louis, MO 63155, a letter enclosing a check, addressed to "CC," at PO Box 94188, Palatine,

IL 60094, in violation of Title 18, United States Code, Section 1708.

## COUNT 3
### Mail Theft (18 U.S.C. § 1708)

On or about April 11, 2024, in the Eastern District of Missouri, the defendant,

### ANTHONY VIRDURE II,

did steal and take from and out of an authorized depository for mail matter, to wit, the United

States Postal Service St. Louis Processing and Distribution Center, located at 1720 Market Street,

St. Louis, MO 63155, a letter enclosing a check, addressed to "C," at PO Box 952366, St. Louis,

MO 63195, in violation of Title 18, United States Code, Section 1708.

## COUNT 4
### Wire Fraud (18 U.S.C. § 1343)

5.      The United States Small Business Administration (hereinafter "SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses.   The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

6.      To aid this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders.   These loans have government-backed guarantees.

### The Paycheck Protection Program

7.      The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses.   The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic.   PPP loans were fully guaranteed by the SBA.

8.      To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business.   The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors.   A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

3

9.      The types of businesses eligible for a PPP loan included individuals who were self-employed or operated as a sole proprietorship, and who did not have any employees. The PPP loan application for a self-employed individual or sole proprietorship required such an individual to certify the individual's annual income or net profit, as typically reported to the Internal Revenue Service on Form 1040, Schedule C, for a given tax year and to provide documentation showing the individual's annual income or net profit.

10.     PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

11.     The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, mortgage interest payments, rent, and utilities for the business. The proceeds of a PPP loan were not permitted to be used by the borrower to purchase consumer goods or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

12.     Capital Plus Financial ("Capital Plus") acted as a participating lender in the PPP program, and in that capacity, accepted and processed PPP loan applications.

13.     Loan applications submitted electronically to participating lenders caused interstate wire communications, including communications with the SBA and the subsequent wiring of funds.

14.     Capital Plus wired funds by means of interstate wire transmission to loan recipients once loans were reviewed and approved.

15.     Defendant Virdure maintained an account with US Bank ending in 7703.

4

## The Scheme to Defraud

16.     It was part of the scheme to defraud that Defendant Virdure applied for a PPP loan on behalf of a sole proprietorship—Virdure Dynamics—through Capital Plus with the intent to fraudulently obtain loan proceeds.

17.     It was further part of the scheme to defraud that Defendant Virdure falsely represented in his PPP loan application that the total income reflected on his 2020 Schedule C 2020 was $100,000.

18.     It was further part of the scheme that Defendant Virdure submitted and caused to be submitted with the First Draw PPP loan application a fraudulent IRS Form 1040, Schedule C (Profit or Loss from Business), purporting to have been filed by Defendant Virdure and reporting $100,000 in Gross Income in 2020.  In truth and fact, the Schedule C was falsified, and had not in fact been submitted to the Internal Revenue Service.

19.     It was further part of the scheme to defraud that Defendant Virdure falsely represented in the PPP loan application that he was the sole proprietor of a tobacco store, despite the fact that he was employed full-time as a mail handler with the United States Postal Service.

20.     It was further part of the scheme to defraud that Defendant Virdure listed an address for Virdure Dynamics, purportedly a tobacco store, that was in fact the residential address of his grandmother's home.

21.     It was further part of the scheme to defraud that Capital Plus relied on the truthfulness of the defendant's representations as to his income in reaching its decision to issue the loan.

22.     On or about April 6, 2021, in St. Louis, Missouri, in the Eastern District of Missouri, the defendant,

## ANTHONY VIRDURE II,

5

devised and intended to devise a scheme to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and willfully participated in such a scheme with knowledge of its fraudulent nature, and for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below:

| COUNT | DATE | LOAN APPLICATION | AMOUNT |
|-------|------|-----------------|--------|
| 4 | April 6, 2021 | SBA Loan # 8866728710 Application for Anthony Virdure submitted to obtain funds from Capital Plus Financial | $20,832.00 |

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.    Pursuant to Title 18, United States Code, Section 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in Count 4, the Defendant(s) shall forfeit to the United States of America any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s).    Subject to forfeiture is a sum of money equal to the total value of property obtained directly or indirectly as a result of such violation.

2.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1708, as set forth in Counts 4, the Defendant(s) shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to such violation. Subject to forfeiture is a sum of money equal to the total value of property, real or personal, constituting or derived from any proceeds traceable to such violation.

6

3.    If any of the property described above, as a result of any act or omission of the

Defendant(s):

   a.    cannot be located upon the exercise of due diligence;

   b.    has been transferred or sold to, or deposited with, a third party;

   c.    has been placed beyond the jurisdiction of the court;

   d.    has been substantially diminished in value; or

   e.    has been commingled with other property which cannot be divided without

difficulty, the United States of America will be entitled to the forfeiture of substitute property

pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____

FOREPERSON

SAYLER A. FLEMING
United States Attorney

*Gwendolyn Carroll*

Gwendolyn E. Carroll #4657003NY
Assistant United States Attorney